**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

NEALA COMMUNICATIONS LLC (d/b/a
International Minute Press of Plymouth), on
behalf of itself and all others similarly situated,

                             Plaintiff

vs

XEROX CORPORATION

                             Defendant

_____

                     **CLASS ACTION COMPLAINT AND**
                     **JURY DEMAND**

                     Case No.:

      Plaintiff Neala Communications LLC, by and through its attorneys, for its Complaint against Defendant alleges and states as follows:

## INTRODUCTION

      1.      Plaintiff, on behalf of itself and all others similarly situated, brings this class action against Xerox Corporation (the "**Defendant**") in relation to Defendant's manufacturing, marketing, and leasing and/or sale of certain Versant digital presses, as well as Defendant's manufacturing and distribution of toner for those presses.

      2.      Certain Versant models, including the V80, V180, V2100, and V3100 (the "**Presses**"), are manufactured with defective components, such as drums. Defendant has declined to remedy this issue and instead continues marketing, leasing and/or selling defective Presses to unwitting consumers.

      3.      Defendant also manufactured and distributed defective toner used in the Presses, which triggered, caused and/or exacerbated Press defects.

4.      As a direct and proximate result of Defendant's actions, the Plaintiff and putative Class were wrongfully and tortiously deceived into leasing and/or purchasing Presses that are defective.

5.      The Plaintiff and putative Class have not received the benefit of their bargain and have suffered extensive and devastating damages including, but not limited to, overpayment for Presses, wasted materials and print costs, and other out-of-pocket losses.

6.      Plaintiff claims for:

    I.    Breach of contract;

    II.    Violations of New York General Business Laws ("**GBL**") §§ 349 and 350;

    III.    Violations of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

    IV.    Negligence;

    V.    Negligent misrepresentation; and

    VI.    Unjust enrichment.

## PARTIES

7.      Plaintiff Neala Communications LLC (d/b/a International Minute Press of Plymouth; hereinafter "**Neala Communications**") is a Michigan corporation with its principal place of business at 1058 S Main Street, Plymouth, Michigan. Neala Communications leases two V180 presses from Defendant. Joseph Kohn is the principal and sole member of Neala Communications.

8.      Defendant Xerox Corporation is a New York corporation with its principal place of business at 201 Merritt 7, Norwalk, Connecticut. Defendant manufactures, markets, leases and sells the Presses, and it manufactures and distributes the toner used in the Presses.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"),

28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there is diversity in citizenship between the parties, there are 100 or more Class Members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

10.     Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (d) because Defendant is a resident of New York.

12.     Further, the applicable lease and purchase agreements specify jurisdiction and venue as the federal and state courts in Monroe County, New York. The agreements also include a choice of law clause whereby the laws of the State of New York govern.

## GENERAL ALLEGATIONS

13.     Defendant manufactures, markets, leases, and sells a wide range of office equipment and supplies, including the Versant line of digital printing presses.

14.     Defects in certain Versant models, namely the V80, V180, V2100, and V3100 (the "Presses") cause the Presses to regularly break down and/or produce flawed prints.

15.     Specifically, the Presses are designed to be used in conjunction with certain toner products manufactured by Defendant.

16.     Defendant's service contracts require that only Defendant's toner products be used in conjunction with its Presses.

17.     The Presses, by virtue of their defects, are susceptible to inconsistencies in the toner products. Those inconsistencies, which have been observed in a substantial percentage of the

relevant toner products, trigger the defects in the Presses and cause damage to various components thereof, including drums, rollers, and developer housings.

18.     The Plaintiff and putative Class ("Class" defined below) are lessees and/or purchasers of the Presses.

19.     Defendant has leased and sold thousands of Presses globally, including in all 50 states.

20.     The lease and purchase agreements were approved and disseminated from New York.

21.     Although some consumers purchase Presses, leases are more common, which typically involve 60 month terms and include a purchase option for fair market value at the end of the term.

22.     Defendant also offers maintenance plans for the Presses.

23.     Maintenance plans are associated with a particular Press, whereby lessees/purchasers pay a certain cost per print and, in return, Defendant provides maintenance services for that Press and toner at no extra charge.

24.     When a Press is on a maintenance plan, Defendant must keep the Press in "good working order", which includes providing on-site support, repairs, and replacement parts, such as drums.

25.     If a Press is on a maintenance plan and Defendant is unable to keep the Press in good working order, Defendant must replace the Press with an identical model or another one with comparable features and capabilities.

26.     Defendant provides maintenance plans in all 50 states and services thousands of Presses across the United States.

27.     Plaintiff Neala Communications leases two V180 presses from Defendant. The lease commenced in July 2019 with a 60 month term and includes a maintenance plan and purchase option for fair market value.

**Defective Components and Toner**

28.     Presses utilize various components, including drums, as well as consumable supplies, such as toner.

29.     To make prints, a laser beams images onto a drum, which in turn uses static electricity to attract toner from a cartridge onto the drum. The drum rolls the toner onto paper and a fuser melts the toner into the paper.

30.     Deficiencies in drums and/or toner may result in flawed prints.

31.     Versant drums and toner are fungible and can be used in multiple Press models, such that issues with any of those items will affect multiple Press models, as well as the availability of replacement parts.

32.     Fungible parts and toner are also used in newer Versant models, such as the V280.

33.     Because of ongoing problems with inconsistent toner, drums in the Presses have routinely and consistently failed much earlier than they are supposed to.

34.     Drums in the Presses should last 10,000 to 50,000 prints, however, they often need replacement after far less usage.

35.     Drums and related components are necessary for the Presses to operate and the constant failing of drums has resulted in a supply shortage of these integral components.

36.     Because the drums have required such frequent replacement on a wide, Plaintiff and putative Class have waited weeks to have drum orders fulfilled, which hinders their printing abilities.

37.     Without functional drums, the Presses cannot make prints and/or the prints are flawed and useless.

38.     The constant failing of drums prevents the Presses from being used for the purposes they were leased and/or purchased.

39.     Due to defective drums, the Plaintiff and putative Class are unable to provide services to their customers, they are forced to decline work they would otherwise accept, and printing that would have been internal must be outsourced, resulting in increased costs.

40.     Properly designed, manufactured, and maintained printing presses will not require such frequent replacement of drums and will not be so vulnerable to inconsistencies in toner products.

41.     Defendant failed to use adequate materials, parts, designs, equipment, and/or personnel in manufacturing the Presses.

42.     Defendant has failed to maintain the Presses and keep them in "good working order", and Defendant has failed to replace the Presses as it is contractually obliged to do.

43.     Defendant has received numerous complaints about issues with the drums in its Presses.

44.     For example, on July 24, 2021, Mr. Kohn (on behalf of Plaintiff Neala Communications) emailed Defendant:

> I went from having five drums on hand to having zero drums on hand in three days. After that, it took two weeks to get two more drums… Sometimes, as a service tech told us, they're bad right out of the box.

45.     On July 29, 2021, Mr. Kohn again emailed Defendant:

> Our newly fixed machine already – between Tuesday and now – has had three drum failures… this is with all brand-new drums. The output from the machine has been unacceptable. We had to stop a color job and black and white job yesterday. We've already stopped another black and white job today…

46.     Defendant is fully aware of drum defects but has failed to publicly acknowledge or remedy the problem.

47.     The problematic toner cannot be "flushed" from devices and even after devices are fully cleaned and affected parts replaced, issues promptly return.

48.     In conversations with Mr. Kohn, Defendant personnel admitted to a widespread toner problem, and further admitted that they are not disclosing this to the majority of Defendant's customers.

49.     Faulty toner continues to be distributed by Defendant.

50.     Issues caused by defective drums and toner are widespread in the Presses and have been devastating to the Plaintiff and putative Class.

51.     Instead of publicly acknowledging the prevalent drum and toner defects and commencing a formal recall so that all Press lessees and purchasers could benefit, Defendant deceived the Plaintiff and putative Class by privately disclosing only to certain people who complained enough that such issues existed.

52.     Defendant is fully aware of the widespread drum and toner defects, however, it has failed to offer an adequate remedy that will benefit all affected consumers.

**Deceptive Practices and False Advertising**

53.     Despite Defendant's knowledge of these defects, Defendant markets the Presses as dependable, functional devices without disclosing these known problems.

54.     Defendant markets its Presses in numerous ways including, but not limited to, through its website, online ads, television ads, whitepapers, blog articles, conventions and trade shows, and brochures.

55.     Defendant markets the V80 as "fitting into many production environments, including in-plant operations, commercial print shops, and quick printers".

56.    Defendant advertises the V80 as capable of 460,000 prints per month, with a recommended volume of 25,000-80,000 prints per month.

57.    Defendant markets the V180 as follows:

> The Versant 180 is a consistent performer in the mid-production range, and ideally suited for smaller to medium-sized print shops and enterprise environments. This press is built with robust components for dependable high-speed printing.

Further,

> The Versant Family of Presses is known for high quality and easy automation, and the ability to print on a wide range of media types. With the Versant 180, you'll instantly advance your capabilities. You'll gain a quality advantage and the ability to create high-value applications. Attract new business, increase margins and earn a reputation for excellence with stunning, accurate output.

58.    Defendant advertises the V180 as capable of 750,000 prints per month, with a recommended volume of 80,000 prints per month.

59.    Defendant markets the V2100 as a device that will "increase performance, quality, and consistency", and which will "reduce costs", "produce more jobs", "impress your customers", and "grow your business".

60.    Defendant advertises the V2100 as capable of 660,000 prints per month, with a recommended volume of 75,000 to 250,000 prints per month.

61.    Defendant's marketing of the V3100 is similar to that of the V180:

> You'll gain an instant quality advantage and ability to create high-value applications. Attract new business, increase margins and build a reputation for excellence with stunning, accurate output.

62.    Defendant further represents that the V3100 will "[r]educe waste and maximize uptime".

63.    Defendant advertises the V3100 as capable of 1,200,000 prints per month, with a recommended volume of 250,000 prints per month.

64.    Defendant's marketing of the Presses is consumer oriented in all 50 states and the Presses are available for sale to the general public.

65.    Defendant's marketing strategies, website, online ads, television ads, whitepapers, blog articles, and brochures were developed in New York.

66.    Defendant's marketing materials have been seen by the Plaintiff and putative Class Members, such as brochures that specify output capacities.

67.    The printing press market is highly competitive and consumers, such as the Plaintiff and putative Class, rely heavily on manufacturer representations when deciding which devices to lease/purchase.

68.    The Plaintiff and putative Class relied on Defendant's widely available and consumer-oriented marketing materials, as well as representations Defendant made about the Presses.

69.    Specifically, the Plaintiff and putative Class relied on advertised output capacities and representations about dependability and quality.

70.    The Plaintiff and putative Class leased and/or purchased Presses based on Defendant's representations on output, dependability, and quality, and they would not have leased or purchased Presses but for those representations.

71.    Given the downtime caused by drum and toner defects, the Presses lack the output capacity, dependability, and reliability that Defendant advertises.

72.    The Presses are not "consistent performers" with "robust components for dependable high-speed printing", and they do not "increase performance, quality, and consistency", "reduce costs", "produce more jobs", "impress customers", "grow business", "attract new business", or "increase margins".

73.     The Plaintiff's and putative Class' experience with the Presses has been diametrically opposite to these representations, where their Presses are regularly broken down, produce flawed prints, increase costs through wasted prints and outsourcing, and force them to decline work and new business, thereby decreasing margins and profitability.

74.     Defendant further misled and deceived the Plaintiff and putative Class by concealing the cause of these issues, their extent, and the likelihood that the Presses can be repaired to function as initially advertised.

75.     The Plaintiff and putative Class have been duped into believing that their Presses can and will be fixed by Defendant. This has hindered their abilities to pursue alternative remedies and aggravated the duration and quantum of the Plaintiff's and putative Class' injuries.

76.     Defendant continues to unscrupulously market, lease, and sell defective Presses to unwary consumers, as it has done to the Plaintiff and putative Class.

77.     Defendant fraudulently and/or negligently manufactured, marketed, leased and/or sold defective Presses and toner.

78.     Due to Defendant's deceptive conduct, the Plaintiff and putative Class have suffered extensive losses and Defendant has been unjustly enriched.

## CLASS ALLEGATIONS

**A. Definition of the Class**

79.     Plaintiff brings this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). Plaintiff seeks to represent a Class of persons preliminarily defined as:

**All persons and entities in the United States who leased or purchased a Xerox Versant 80, Xerox Versant 180, Xerox Versant 2100, or Xerox Versant 3100.**

This definition is subject to modification as discovery discloses further information. Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

80.    This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

a) The Class, which includes hundreds of members, is so numerous that joinder of all Class Members is impracticable;

b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

c) Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

d) The claims of the representative parties are typical of the claims of the Class;

e) A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

f) The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

g) There are no unusual difficulties foreseen in the management of this class action; and

h) The Plaintiff, whose claims are typical of those of the Class, through its experienced counsel, will zealously and adequately represent the Class.

## B.   Numerosity

81.    There are at least hundreds of persons who have leased and/or purchased Presses. Accordingly, the Class consists of hundreds or more members and, therefore, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

82.    The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

### C. Commonality

83.    Numerous common questions of law and fact predominate over any questions affecting individual Class Members including, but not limited to, the following:

a) Whether Press components, including drums, are defective;

b) Whether Defendant knew of issues with Press drums and continued marketing, leasing and selling Presses with that knowledge;

c) Whether Defendant's marketing of the Presses was deceiving or misleading given drum defects;

d) Whether Defendant manufactured and/or distributed defective toner;

e) Whether defective toner triggered or exacerbated issues with defective Press components;

f) Whether Defendant violated GBL §§ 349 and/or 350;

g) Whether Defendant violated the Lanham Act;

h) Whether Defendant's misrepresentations about the Presses, including those regarding drums, toner, output capacity, and reliability were made knowingly;

i) Whether Defendant's representations about the Presses, including those regarding drums, toner, output capacity, and reliability were negligent;

j) Whether the Plaintiff and Class overpaid for the Presses;

k) Whether Defendant's conduct caused injury to the Plaintiff and Class Members;

l) Whether Defendant was unjustly enriched;

m) Whether the Plaintiff and Class are entitled to recover damages, whether actual, statutory or punitive, restitution, and/or equitable relief from Defendant based on the conduct alleged herein; and

n) The proper measure of damages incurred by the Plaintiff and Class.

**D.   Typicality**

84.    Plaintiff has the same interests in this matter as all other members of the Class and its claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

85.    The claims of the Plaintiff and other Class Members have a common cause and their damages are of the same type. The claims originate from the same unfair, misleading, and deceptive acts by Defendant in manufacturing, marketing, leasing and/or selling Presses.

86.    All Class Members have suffered injury in fact as a result of leasing and/or purchasing Presses, which caused them financial loss.

**E.   Adequacy of Representation**

87.    Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and it does not have interests adverse to the Class.

88.    Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiff and all absent Class Members.

**F.   Class Treatment is the Superior Method of Adjudication**

89.    A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a)   Individual claims by the Class Members would be impracticable as the costs of
        pursuit would far exceed what any one Class Member has at stake;

b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f) The Plaintiff seeks equitable relief relating to the Defendant's common actions, and the equitable relief sought would commonly benefit the Class as a whole;

g) The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

h) The proposed class action is manageable.

## **CAUSE OF ACTION I**

### **BREACH OF CONTRACT**

90.    Plaintiff restates all allegations of this Complaint as if fully restated herein.

91.    Defendant has a duty to deal in good faith and fairly with the Plaintiff and putative Class.

92.    The Plaintiff and putative Class executed lease and/or purchase agreements (i.e. contracts) with Defendant, which require them to make lease/purchase payments to Defendant.

93.    The lease and/or purchase agreements include maintenance plans, whereby the Plaintiff and putative class pay a certain cost per print and, in return, Defendant provides maintenance services for respective Presses.

94.     The maintenance plans require Defendant to keep the Presses in "good working order", which includes providing on-site support, repairs, and replacement parts, such as drums.

95.     The Plaintiff and putative Class performed their contractual obligations by making lease/purchase and maintenance plan payments to Defendant.

96.     Defendant breached its agreements with the Plaintiff and putative class by failing to keep the Presses in good working order such that the Presses are regularly broken down and produce flawed prints.

97.     As a result of Defendant's breach, the Plaintiff and putative Class have suffered damages in the form of overpayment for Presses, wasted materials (e.g. paper), increased costs through wasted prints and outsourcing, and being forced to decline work and new business, thereby decreasing margins and profitability.

98.     The lease and purchase agreements provide that in the event Defendant fails to keep a Press in good working order, Defendant will replace the Press with an identical model or another model with comparable features and capabilities.

99.     Defendant has failed to replace the Presses of the Plaintiff and putative Class in breach of its contractual obligation to do so.

100.    The Plaintiff and putative Class request injunctive relief whereby Defendant is ordered to comply with its contractual obligations and replace their defective Presses.

## CAUSE OF ACTION II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAWS §§ 349 AND 350

101.    Plaintiff restates all allegations of this Complaint as if fully restated herein.

102.    Defendant has a duty to deal in good faith and fairly with the Plaintiff and putative Class.

103.    Defendant has a statutory duty to refrain from unfair, misleading, and/or deceptive methods, acts or practices, including false advertising, in the marketing, leasing and selling of its Presses.

104.    Defendant violated its duties by marketing, leasing and/or selling its New York designed Presses to the Plaintiff and putative Class when Defendant knew of significant defects with drums but did not disclose them.

105.    Defendant's marketing and advertising of its Presses is consumer oriented.

106.    Defendant markets its Presses through its website, online ads, television ads, whitepapers, blog articles, conventions and trade shows, and brochures, all of which are directed at and accessible by general consumers.

107.    Any member of the general public can lease and/or purchase Defendant's Presses.

108.    Given the complexity of the Presses and the competitive market in which they are leased and sold, consumers, such as the Plaintiff and putative Class Members, rely heavily on advertisements, representations, and materials provided by Defendant and other manufacturers.

109.    Through the marketing mediums mentioned above, Defendant promotes the Presses as, *inter alia*, "consistent performers" with "robust components for dependable high-speed printing", that they "increase performance, quality, and consistency", "reduce costs", "produce more jobs", "impress customers", "grow business", "attract new business", and "increase margins".

110.    Defendant also advertises specific output capacities for various Press models:

   a)  V80 – capable of 460,000 prints per month, with a recommended volume of 25,000-80,000 prints per month;

   b)  V180 – capable of 750,000 prints per month, with a recommended volume of 80,000 prints per month;

c) V2100 – capable of 660,000 printer per month, with a recommended volume of 75,000 to 250,000 prints per month; and

d) V3100 – capable of 1,200,000 prints per month, with a recommended volume of 250,000 prints per month.

111.   Some or all of Defendant's marketing materials have been seen by the Plaintiff and all putative Class Members, such as brochures that specify output capacities.

112.   The Plaintiff and putative Class relied on these false, deceptive, and misleading representations in deciding to lease and/or purchase Presses.

113.   Defendant knew the drums in the Presses were defective and would prevent the Presses from functioning as represented.

114.   Defendant knew or should have known that the defective toner it manufactured and distributed would trigger/exacerbate Press component defects and prevent the Presses from functioning as represented.

115.   The Plaintiff and putative Class leased and/or purchased Presses based on advertised output capacities and representations that the Presses were dependable, reliable, and would produce high quality prints.

116.   Given the amount of time the Presses are broken down, their output capacities are nowhere near what is represented by Defendant's website, in brochures, or in other marketing materials directed at the Plaintiff and putative class and general consumers.

117.   Due to the defective drums and toner, the Presses cannot satisfy the purposes which the Plaintiff and putative Class intended and reasonably expected.

118.   The Plaintiff and putative Class would not have leased or purchased Presses had the drum defects been disclosed to them or if they had been aware of the actual output capacities given the frequency in which the Presses are broken down.

119.   As a direct a result of Defendant's conduct, the Plaintiff and putative Class have suffered damages in the form of overpayment for Presses, wasted materials (e.g. paper), increased costs through wasted prints and outsourcing, and being forced to decline work and new business, thereby decreasing margins and profitability.

120.   A significant portion of the Plaintiff's and putative Class' transactions with Defendant occurred in New York.

121.   Defendant is a New York corporation with a large physical presence in New York.

122.   The underlying lease and purchase agreements were developed in, disseminated from, and financed through New York.

123.   The lease and purchase agreements require the Plaintiff and putative Class to bring this action in New York and dictate that their claims are governed by New York law.

124.   The subject Presses and their components were designed, developed, and/or manufactured in New York.

125.   Defendant's marketing strategies, website, online ads, television ads, whitepapers, blog articles, and brochures were developed in New York.

126.   Accordingly, the Plaintiff and putative Class are entitled to relief under New York law given their close nexus to New York.

127.   Defendant's deceptive representations, material omissions, and false advertising are violations of GBL §§ 349 and 350.

128.   As a proximate result of Defendant's misrepresentations, the Plaintiff and putative Class have suffered ascertainable losses and are entitled to damages and attorneys' fees pursuant to GBL §§ 349 and/or 350 in an amount to be determined at trial.

## CAUSE OF ACTION III

## VIOLATIONS OF THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B)

129.    Plaintiff restates all allegations of this Complaint as if fully restated herein.

130.    Defendant has a duty to deal in good faith and fairly with the Plaintiff and putative Class.

131.    Defendant has a statutory duty to refrain from unfair, misleading, and/or deceptive methods, acts or practices, including false advertising, in the marketing, leasing and selling of its Presses.

132.    Defendant violated its duties by marketing, leasing and/or selling its Presses to the Plaintiff and putative Class when Defendant knew of significant defects with drums but did not disclose them.

133.    The Plaintiff and putative Class are consumers who leased and/or purchased Presses.

134.    Defendant's marketing and advertising of its Presses is consumer oriented.

135.    Defendant markets its Presses through its website, online ads, television ads, whitepapers, blog articles, conventions and trade shows, and brochures, all of which are directed at and accessible by general consumers in all 50 states.

136.    Any member of the general public can lease and/or purchase Defendant's Presses.

137.    Given the complexity of the Presses and the competitive market in which they are leased and sold, consumers, such as the Plaintiff and putative Class Members, rely heavily on advertisements, representations, and materials provided by Defendant and other manufacturers.

138.    Through the marketing mediums mentioned above, Defendant promotes the Presses as, *inter alia*, "consistent performers" with "robust components for dependable high-speed printing", that they "increase performance, quality, and consistency", "reduce costs", "produce more jobs", "impress customers", "grow business", "attract new business", and "increase margins".

139.   Defendant also advertises specific output capacities for various Press models:

e)   V80 – capable of 460,000 prints per month, with a recommended volume of 25,000-80,000 prints per month;

f)   V180 – capable of 750,000 prints per month, with a recommended volume of 80,000 prints per month;

g)   V2100 – capable of 660,000 printer per month, with a recommended volume of 75,000 to 250,000 prints per month; and

h)   V3100 – capable of 1,200,000 prints per month, with a recommended volume of 250,000 prints per month.

140.   Some or all of Defendant's marketing materials have been seen by the Plaintiff and all putative Class Members, such as brochures that specify output capacities.

141.   The Plaintiff and putative Class relied on these false, deceptive, and misleading representations in deciding to lease and/or purchase Presses.

142.   Specifically, the Plaintiff and putative Class leased and/or purchased Presses based on advertised output capacities and representations that the Presses were dependable, reliable, and would produce high quality prints.

143.   Through these leases and purchases, the Presses were distributed in all 50 states and thus entered the stream of interstate commerce.

144.   Given the amount of time the Presses are broken down, their output capacities are nowhere near what is represented by Defendant's website, in brochures, or in other marketing materials directed at consumers.

145.   Due to the defective drums and toner, the Presses cannot satisfy the purposes which the Plaintiff and putative Class intended and reasonably expected.

146.   The Plaintiff and putative Class would not have leased or purchased Presses had the drum defects been disclosed to them or if they had been aware of the actual output capacities given the frequency in which the Presses are broken down.

20

147.    As a result of Defendant's false and misleading conduct, the Plaintiff and putative Class have suffered damages in the form of overpayment for Presses, wasted materials (e.g. paper), increased costs through wasted prints and outsourcing, loss of sales (e.g. being forced to decline work and new business), and loss of goodwill (e.g. having to cancel projects or completing them later than promised).

148.    Defendant's deceptive representations and material omissions are violations of the Lanham Act.

149.    As a proximate result of Defendant's misrepresentations, the Plaintiff and putative Class have suffered ascertainable losses and are entitled to damages and attorneys' fees pursuant to the Lanham Act in an amount to be determined at trial.

## CAUSE OF ACTION IV

### NEGLIGENCE

150.    Plaintiff restates all allegations of this Complaint as if fully restated herein.

151.    Defendant owed, and continues to owe, a duty to provide functional non-harmful toner to the Plaintiff and putative Class.

152.    Defendant breached its duties by negligently manufacturing and distributing defective toner, which directly and proximately triggered, caused and/or exacerbated problems with Press components, caused Presses to break down, and/or caused flawed prints.

153.    Such component failures, Press breakdowns, and flawed prints were the foreseeable result of Defendant's provision of faulty toner, and the Plaintiff and putative Class suffered damages as alleged herein.

154.    Such damages include, but are not limited to, wasted materials and print costs, diminished value of Presses, and other out-of-pocket losses in an amount to be determined at trial.

155.    By failing to properly manufacture and distribute functional non-harmful toner, Defendant failed to exercise the duty of ordinary care and diligence.

156.    Defendant allowed destructive toner to be manufactured and distributed, which caused and/or aggravated defects with Press drums, caused Presses to malfunction rendering them inoperable, and/or caused flawed prints that were useless.

157.    Defendant knowingly, recklessly, and with a conscious disregard of the Plaintiff and putative Class allowed these problems to perpetuate by failing to acknowledge the toner issue and by evading responsibility for it occurring.

158.    On this basis and given Defendant's egregious conduct, the Plaintiff and putative Class are entitled to an award for compensatory, injunctive, exemplary, and/or punitive relief in an amount to be determined at trial.

## CAUSE OF ACTION V

## NEGLIGENT MISREPRESENTATION

159.    Plaintiff claims for negligent misrepresentation and restates all other allegations of this Complaint as if fully restated herein.

160.    Defendant negligently misrepresented that the Presses could be repaired to function as marketed and advertised, despite the drum and toner defects.

161.    Defendant maliciously instructed its technicians, help line operators, and other personnel to deny that any widespread issues existed, and that any drum or toner related issues were exceptional and could be routinely remedied.

162.    Defendant did this to downplay legitimate concerns that the Plaintiff and putative Class had about deficiencies with the Presses.

163.    Given Defendant's experience with printing presses, it knew that the drum and/or toner defects were significant and could not be corrected promptly, if at all, and indications it made to the contrary were exaggerations and/or misstatements of fact.

164.    Defendant also knew that the Plaintiff and putative Class would trust and rely on Defendant, which they did, given their contractual relationship and Defendant's prominence in the printing press industry.

165.    To the extent that Defendant did not know how pervasive and extensive issues with the drums and/or toner were, it was due to Defendant's negligence and/or lack of due diligence.

166.    Defendant has a duty to deal in good faith and fairly with the Plaintiff and putative Class, which precludes Defendant from making misleading or deceptive representations, and requires Defendant to exercise reasonable and ordinary care in providing goods and services to the Plaintiff and putative Class.

167.    Defendant breached this duty by failing to acknowledge and disclose the significant and widespread drum and toner defects.

168.    The Plaintiff and putative Class relied on Defendant's negligent representations and omissions, putting faith in Defendant's household name and knowledgeable personnel, and continued making payments despite the Presses not working.

169.    This caused foreseeable damages to the Plaintiff and putative Class including, but not limited to, wasted prints (which Defendant charged for), the inability to provide services to customers, being forced to decline work they would otherwise accept, and printing that would have been internal was outsourced resulting in increased costs.

170.    Further, the Plaintiff and putative Class delayed taking action to remedy this issue, such as demanding replacement devices or seeking alternative suppliers.

171.    Defendant's material and negligent misrepresentations aggravated and perpetuated the injuries that the Plaintiff and putative Class suffered.

172.    As a proximate result of Defendant's negligent misrepresentations, the Plaintiff and putative Class have suffered ascertainable out-of-pocket losses and are entitled to relief in an amount to be determined at trial.

173.    On this basis and given Defendant's egregious conduct, the Plaintiff and putative Class are entitled to an award for compensatory, injunctive, exemplary, and/or punitive relief in an amount to be determined at trial.

## CAUSE OF ACTION VI

### UNJUST ENRICHMENT

174.    Plaintiff restates all allegations of this Complaint as if fully restated herein,

175.    Defendant has unjustly retained a benefit to the detriment of the Plaintiff and putative Class.

176.    Defendant knowingly leased and sold Presses with defective drums at price levels for problem-free, fully functional digital printing presses.

177.    Defendant then manufactured and distributed defective toner, which triggered, caused and/or exacerbated further damage to the Presses.

178.    Defendant has failed to disclose or acknowledge these issues, and has taken active steps to downplay them, such as instructing its personnel to deny that such issues exist.

179.    Defendant has taken these actions for the purpose of enriching itself.

180.    The Plaintiff and putative Class leased and/or purchased defective presses and made corresponding payments to Defendant, which Defendant received and to which it is not entitled.

181.    Defendant has been benefited at the expense of the Plaintiff and putative Class.

182.     Defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience as Defendant intentionally, knowingly, recklessly, and/or negligently did not disclose issues with Press drums and/or toner.

183.     As a direct result of Defendant's misrepresentations and material omissions, the Plaintiff and putative Class have suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A.   Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B.   Designation of the Plaintiff as representative of the proposed Class and designation of its counsel as Class counsel;

C.   Judgment in favor of the Plaintiff and the Class Members as against the Defendant;

D.   An award of injunctive relief requiring Defendant to replace the Plaintiff's and putative Class' defective Presses;

E.   An award to the Plaintiff and Class Members for actual, compensatory, statutory, and punitive damages, including pre- and post-judgment interest;

F.   An award to the Plaintiff and Class Members for equitable relief, namely rescission of their contracts with Defendant and/or restitution;

G.   An award of attorneys' fees and costs, including pre- and post-judgement interest;

H.   An Order holding that Defendant's marketing, leasing, and selling of the Presses was misleading and deceptive, in violation of GLB §§ 349 and 350 and/or the Lanham Act;

I.   An Order for injunctive relief, enjoining Defendant from marketing, leasing, and selling the defective Presses; and

J.   Such further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure of all issues so triable.


Date: February 22, 2022                                Respectfully submitted,

                                                       s/   *Nicholas A. Coulson*
                                                       Steven D. Liddle
                                                       Nicholas A. Coulson
                                                       Lance Spitzig*
                                                       *application pending
                                                       **LIDDLE SHEETS COULSON PC**
                                                       975 East Jefferson Avenue
                                                       Detroit, MI 48207-3101
                                                       T: (313) 392-0015
                                                       E: sliddle@lsccounsel.com
                                                       E: ncoulson@lsccounsel.com
                                                       E:lspitzig@lsccounsel.com

                                                       *Attorneys for Plaintiff and the Putative Class*