UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NEALA COMMUNICATIONS LLC (d/b/a
International Minute Press of Plymouth),
on behalf of itself and all others
similarly situated,

22-CV-6088 CJS
DECISION and ORDER

Plaintiff,

vs

XEROX CORPORATION,

Defendant.

_____

INTRODUCTION

Plaintiff Neala Communications LLC ("Neala") brings this putative class-action action alleging breach of contract, breach of the implied covenant of good faith and fair dealing, violations of New York General Business Law §§ 349 and 350, negligence and negligent misrepresentation against defendant Xerox Corporation ("Xerox").[1] ECF No. 1. In broad strokes, Neala alleges that Xerox made, marketed, and leased certain digital presses and toner that are defective, depriving Neala of the benefit of its bargain. ECF 1. Now before the Court is Defendant's Motion to Dismiss the Complaint, ECF No. 12. For the reasons discussed below the motion is granted in part and denied in part.

_____

[1] The Complaint also alleged causes of action for unjust enrichment and violations of the Lanham Act, but Neala voluntarily discontinued both claims. *See* ECF 14 at 8 n.1 (unjust enrichment); ECF 23 (Neala declined to defend Lanham Act claim during oral argument).

BACKGROUND

Unless otherwise noted, the following facts are taken from Neala's Complaint, ECF 1, and the lease agreement ("Lease Agreement") entered into between the parties on June 14, 2019, ECF No. 12-2.[2]

As relevant here, Xerox manufactures, markets, leases, and sells the Versant line of digital printing presses (the "Presses").  (ECF 1 at ¶ 13).  The Presses use a variety of components, including drums and toner.  (*Id.* at ¶ 28). "To make prints, a laser beams images onto a drum, which in turn uses static electricity to attract toner from a cartridge onto the drum."  (*Id.* at ¶ 29).  "The drum rolls the toner onto paper and a fuser melts the toner into the paper."  (*Id.*).  If the drums or toner are defective, the prints may be flawed. (*Id.* at ¶ 30).  "[T]he Presses are designed to be used in conjunction with certain toner products manufactured by" Xerox, and the service contracts between Neala and Xerox mandate the use of Xerox's toner products "in conjunction with the Presses."  (*Id.* at ¶¶ 15, 16).  Neala alleges that "[d]efects in certain Versant models . . . cause the Presses to regularly break down and/or produce flawed prints."  (*Id.* at ¶ 14).

Neala alleges that "[t]he Presses, by virtue of their defects, are susceptible to inconsistencies in the toner products."  (*Id.* at ¶ 17).  The "inconsistencies, which have been observed in a substantial percentage of the relevant toner products, trigger the defects in the Presses and cause damage to various components thereof, including drums, rollers, and developer housings."  (*Id.*).  The result, Neala alleges, is that "drums

---

[2] On a motion to dismiss for failure to state a claim, a district court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  The Lease Agreement at issue here is referenced at multiple points in the complaint and is integral to Neala's claims, such that the Court may consider it here.  *See* ECF 1 at ¶¶ 12, 16, 20, 21, 27, 93-100.

in the Presses have routinely and consistently failed much earlier than they are supposed to." (*Id.* at ¶ 33).  For example, Neala alleges that "[d]rums in the Presses should last 10,000 to 50,000 prints, however, they often need replacement after far less usage." (*Id.* at ¶ 34).  Because of this, replacement parts are scarce.  (*Id.* at ¶ 35).  And because "[t]he problematic toner cannot be 'flushed' from devices," (*Id.* at ¶ 47), "even after devices are fully cleaned and affected parts replaced, issues promptly return." (*Id.*)

The Lease Agreement requires Xerox to keep the presses in "good working order," but Neala alleges that Xerox failed to either adequately repair the Presses or replace them as required by the Lease Agreement.  (*Id.* at ¶¶ 25, 42; ECF 12-2 at 5).  "Without functional drums, the Presses cannot make prints and/or the prints are flawed and useless." (*Id.* at ¶ 37).  "The constant failing of drums prevents the Presses from being used for the purposes they were leased and/or purchased," Neala alleges, causing disruption to plaintiffs' businesses.  (*Id.* at ¶¶ 38, 39).  Moreover, Neala alleges that Xerox was aware of the problems with the drums, "but has failed to publicly acknowledge or remedy the problem." (*Id.* at ¶¶ 46, 51, 52).

Neala filed its Complaint on February 22, 2022.  (ECF ¶ 1).  Neala is pursuing four causes of action: 1) breach of contract (*Id.* at ¶¶ 90-100); 2) violation of New York General Business Law sections 349 and 350 (*Id.* at ¶¶ 101-128); 3) negligence (*Id.* at ¶¶ 150-158); and 4) negligent misrepresentation (*Id.* at ¶¶ 159-173).  Neala also seeks class-action certification.  (*Id.* at ¶¶ 79-89).

Xerox filed its motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 24, 2022, contending that Neala failed to state any viable claims.  (ECF ¶ 12).  Xerox argues that Neala does not allege sufficient facts to plead a

breach of the Lease Agreement, and that Neala's claim for breach of the implied covenant of good faith and fair dealing is duplicative of its breach of contract claim. (*Id.* at 9-12). As for the claims brought pursuant to GBL §§ 349 and 350, Xerox argues they are barred because (1) Neala does not allege it was deceived in New York, as required by the statute; and (2) the claims are time barred. (*Id.* at 12-16). Finally, Xerox argues the claims for negligence and negligent misrepresentation both fail because (1) Neala does not allege a duty that arises independently of the Lease Agreement; (2) the claims are barred by the economic loss doctrine); and (3) the negligent misrepresentation claims do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (*Id.* at 22-25).

Neala filed its opposition to the motion on June 23, 2022 (ECF ¶ 14). Neala argues that it adequately pleaded a breach of contract because the Complaint alleges that the remedy set forth in the Lease Agreement fails of its essential purpose, allowing Neala to pursue damages not provided for in the Lease Agreement. (*Id.* at 12-14). It argues that its claim for breach of the implied covenant of good faith and fair dealing is distinct from its breach of contract claim. (*Id.* at 14-16). Moreover, it argues that its §§ 349 and 350 claims are viable because Neala (1) adequately alleges it was deceived in New York; and (2) its claims are not time barred because of statutory tolling. (*Id.* at 16-22). As to its negligence claims, Neala argues that it pleaded Xerox owed it a duty beyond the Lease Agreement: the statutory duty to not engage in deceptive acts and practices and engage in false advertising, as set forth in §§ 349 and 350. (*Id.* at 25-26). It also argues that it falls within several exceptions to the economic loss rule, and that its negligent misrepresentation claims are adequately pleaded. (*Id.* at 25-32). Xerox replied on July

8, 2022.  (ECF 17).  The Court held oral argument on the motion on June 1, 2023 (ECF 23) and reserved decision.

The Court has carefully considered the parties' submissions. For the reasons set forth below, Xerox's motion is granted in part and denied in part.

DISCUSSION

Standards Applicable to Motions Under Rule 12(b)(6)

Xerox has moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and the standards for such an application are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted); *see also*, id. at 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL

5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* ). *see also, In re Myovant Scis. Ltd. Section 16(b) Litig*., 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021) ("The plaintiffs claim that discovery of the relevant disclosure schedule may establish the portion of the purchase price allocated to Movant shares. . . . But 'it is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence.' *Twombly*, 550 U.S. at 559. Because their unsupported speculation does not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming that discovery will reveal a basis for their claim.").

Express Breach of Contract

Xerox argues that Neala's claim for express breach of contract is barred by the exclusive remedy clause in the Lease Agreement, which provides that Neala's "exclusive remedy for Xerox's failure to provide Maintenance Services" is "replace[ment] [of] the Equipment with an identical model or at Xerox's option, another model with comparable features and compatibilities."  (ECF 12-2 at ¶ 5).

In New York, parties may restrict a "buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts." N.Y. U.C.C. Law § 2-719(1)(a),(b) (McKinney). However, such restrictions are not enforceable "[w]here circumstances cause an exclusive or limited remedy to fail of its

essential purpose." N.Y. U.C.C. Law § 2-719(2) (McKinney).   "A remedy fails of its essential purpose if 'the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all.'" *Maltz v. Union Carbide Chemicals & Plastics Co*., 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (quoting *American Tel. & Tel. Co. v. New York City Human Resources Admin.*, 833 F. Supp. 962, 986 (S.D.N.Y.1993)). "Ordinarily, whether circumstances have caused a 'limited remedy to fail of its essential purpose' . . . is a question of fact for the jury and one necessarily to be resolved upon proof of the circumstances occurring after the contract is formed." *Cayuga Harvester, Inc. v. Allis–Chalmers Corp*., 465 N.Y.S.2d 606, 612 (4th Dep't 1983). However, a court may grant a defendant's motion to dismiss when the plaintiff cannot show that "enforcement of the limited remedy clause would effectively deprive them of a remedy." *Maltz*, 992 F. Supp. at 304; *see also, e.g., Xerox Corp. v. Graphic Mgmt. Servs. Inc*., 959 F. Supp. 2d 311, 320 (W.D.N.Y. 2013) ("Courts have found that where the contract provides for either the option of replacement of the goods or the contract price, and where the non-breaching party has not alleged that the limited remedy provision would 'effectively deprive them of a remedy,' the limitation of liability clause does not fail of its essential purpose.").

Xerox argues that Neala's claim does not plead that the remedy failed of its essential purpose, as it fails to plead Neala sought a replacement, or "how replacement with a different model with comparable features or capabilities would deprive it of a remedy." (ECF 17 at 3). Neala responds that "substantially the entirety of" its "complaint is devoted to alleging why" repair or replacement does not suffice as a remedy. (ECF 14 at 13). It notes that "[a] seller's inability to effect a successful repair or replacement after

numerous attempts may demonstrate such a failure of the restricted remedy's essential purpose." *Bristol Village, Inc. v. Louisiana-Pacific Corp.* 170 F. Supp. 3d 488, 508 (W.D.N.Y. 2016) (quoting *Waverly Props, v. KMG Waverly, LLC*, 824 F.Supp.2d 547, 558 (S.D.N.Y.2011), *adopted*, 824 F.Supp.2d 547 (S.D.N.Y. 2011) .

While Neala's responsive brief contends "[t]hat each of the Presses, with their fungible components, is compromised by defects, [which] prevents the remedy of replacement from yielding its purported and expected relief," its Complaint does not include such an allegation. Rather, the Complaint pleads as its theory of breach that:

> 98.    The lease and purchase agreements provide that in the event Defendant fails to keep a Press in good working order, Defendant will replace the Press with an identical model or another model with comparable features and capabilities.

> 99.    Defendant has failed to replace the Presses of the Plaintiff and putative Class in breach of its contractual obligation to do so.

> 100.   The Plaintiff and putative Class request injunctive relief whereby Defendant is ordered to comply with its contractual obligations and *replace their defective Presses*.

(ECF 1 at ¶¶ 98-100).  There is no allegation in the Complaint that replacement would be futile.[3]  Neala cannot amend the Complaint via its response to Xerox's motion to dismiss. *See Lama v. Meta Platforms, Inc.*, -- F. Supp. 3d --, 2024 WL 2021896, at *7 (N.D.N.Y. May 6, 2024) ("Plaintiff does not make any such claim in the Amended Complaint related to a failure to provide any required notice and cannot (as a party represented by counsel) constructively amend the Amended Complaint merely by making arguments in a

---

[3] During oral argument, Xerox contended that Neala's claim also fails because it never requested Xerox replace the Presses.  Neala argues that the Lease Agreement does not include language requiring it request replacement.  The Court agrees with Neala that the Lease Agreement does not state replacement must be requested.  The issues of whether Xerox is in breach of its obligation to provide maintenance services, or its obligation to provide a replacement press if repair fails, are for later in the litigation.

response brief."); *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled that a plaintiff 'cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'") (quoting *K.D. v. White Plains Sch. Dist.*, 921 F.Supp.2d 197, 209 n. 8 (S.D.N.Y.2013)).

Neala argues that the Complaint pleads that defects in the drums and toners render replacement an ineffective remedy (ECF 14 at 13), but the allegations it relies on do not support that contention:

> 17.   The Presses, by virtue of their defects, are susceptible to inconsistencies in the toner products. These inconsistencies, which have been observed in a substantial percentage of the relevant toner products, trigger the defects in the Presses and cause damage to various components thereof, including drums, rollers and developer housings.

> 33.   Because of ongoing problems with inconsistent toner, drums in the Presses have routinely and consistently failed much earlier than they are supposed to.

> 48.   In conversations with [Neala], Defendant personnel admitted to a widespread toner problem, and further admitted that they are not disclosing this to the majority of Defendant's customers.

(ECF 1 at ¶¶ 17, 33, 48).  While these allegations suffice to allege that a problem with the toner renders the Presses defective, they do not allege that replacement is futile.  The Complaint is nearly silent on the issue of replacement: it does not plead that replacement was sought and denied, or the replacement was offered and rejected; or that replacement with a different comparable model would not be an adequate remedy.

In contrast, in *Bristol-Village* the exclusive remedy limited plaintiff's recovery to "no more than twice the original purchase price of the affected trim." 170 F. Supp. 3d at 508-509.  Plaintiff there argued the limited remedy failed of its essential purpose because defendant failed to offer adequate compensation, instead offering a sum that represented

twice the purchase price for some, but not all, of the allegedly defective product.  *Id.*
Based on this dispute, the court concluded there were "disputed issues of material fact
as to whether the limited remedy provision fails of its essential purpose."  *Id.*  No similar
allegations are made here.  Indeed, in its claim for breach of contract, Neala explicitly
*seeks* replacement as a remedy.  (ECF at ¶ 100).

In sum, the Complaint simply does not allege that replacement would fail of its
essential purpose.  The Court thus dismisses Neala's claim for consequential damages.
Neala's recovery is limited to the replacement remedy provided for in the Lease
Agreement.  *See, e.g., Xerox Inc. v. JCTB Inc.*, 787 F. App'x 43, 44 (2d Cir. 2019) ("As to
their breach of contract counterclaim, Defendants' exclusive remedy for a purported
breach by Plaintiff was not litigation, but to request new equipment."); *Xerox Corp. v.
JCTB Inc.*, 208 WL 5776423, *8 (W.D.N.Y. Nov. 2, 2018) (dismissing counterclaim where
"Defendants have not explained why, if their chief complaint is that the printers were not
reliable, the limited remedy in the Finance Lease—repair or replacement of the printers—
would effectively deprive them of a remedy.").

### Implied Covenant of Good Faith and Fair Dealing

"Under New York law, 'implicit in every contract is a covenant of good faith and fair
dealing . . . which encompasses any promises that a reasonable promisee would
understand to be included.'"  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir.
2018) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)).   "The
implied covenant of good faith and fair dealing includes a promise that 'neither party to a
contract shall do anything that has the effect of destroying or injuring the right of the other
party to receive the fruits of the contract, or to violate the party's presumed intentions or

reasonable expectations.'" *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (quoting *Spinelli*, 903 F.3d at 205).   "A claim for violation of the covenant survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract."  *Id.*; *see also Skillgames, LLC v. Brody*, 767 N.Y.S.2d 418, 423 (1st Dep't 2003) ("A claim for breach of the implied covenant of good faith and fair dealing cannot substitute for an unsustainable breach of contract claim.").

Neala argues that because of "the limited nature of Plaintiff's breach of express contract claim and the broader nature of Plaintiff's injuries for Defendant's breach of the implied covenant[] the claims are not at all coterminous."  (ECF 14 at 14).  It argues that its "breach of express contract claim is based on Defendant's failure to provide Maintenance Services," but its "breach of good faith and fair dealing claim is based on Defendant affirmatively deceiving Plaintiff with respect to known issues with the Presses, drums, and toner."  (*Id.* at 15-16). The damages for the implied breach are separate from the damages for the express breach, it argues, "as they relate to amounts paid under the contract that do not relate to the limited category of Maintenance Services."  (*Id.* at 16).

 The Court disagrees.  The Complaint does not include a separate cause of action for breach of the implied covenant, rather, the allegations related to breach of the implied covenant are contained within the cause of action for express breach—and are the same allegations supporting the claim for express breach. (ECF 1 ¶¶ 90-100).  None allege an affirmative deception.  Instead, the Complaint alleges that Xerox "personnel admitted to a widespread toner problem," that was not being "disclos[ed] to the majority of [Xerox's]

customers."  (*Id.* at ¶ 48; *see also* ¶ 46 alleging  a "failure to publicly acknowledge . . . the problem.")).  Moreover, the Complaint does not allege what the alleged deception was in aid of—persuading Neala to enter in the Lease Agreement, for example, or stringing Neala along for so long that its claims would be time barred. *Compare Zimmerli Textil AG v. Kabbaz*, 2015 WL 5821523, at *7 (E.D.N.Y. Sept. 30, 2015) (allowing claim for breach of the implied covenant claim to proceed where complaint alleged defendants engaged in an "affirmative deception by sending [plaintiff] dishonored checks in an attempted to secure more shipments of [plaintiff's] product notwithstanding their failure to pay outstanding invoices.").

Nor is *Stanley v. Direct Energy Services, LLC* persuasive.  466 F. Supp. 3d 415 (S.D.N.Y. 2020). In *Stanley*, plaintiff brought suit against defendant, an electric utility, alleging that defendant claimed to charge competitive utility rates based on market conditions in its variable rate plan, but instead charged prices not based on market prices. *Id.* at 419-20.  Defendant sought to dismiss the claim for breach of the implied covenant of good faith and fair dealing, arguing it was duplicative of the express breach of contract claim.  The court disagreed, finding the good faith and fair dealing claim distinct because it went to how defendant exercised its contractual discretion to set prices.  *Id.* at 429. Plaintiff there "expressly alleg[ed] that "even if contractually, 'Defendant had unilateral discretion to set the variable rate for electricity,' plaintiff 'reasonably expected that the variable rates for electricity would, notwithstanding Defendant's profit goals, reflect the wholesale and retail market prices for electricity and that Defendant would refrain from price gouging.'" *Id.*  Plaintiff in *Stanley* also alleged that "[w]ithout these reasonable expectations, Plaintiff and other Class members would not have agreed to buy electricity

13

from Defendant." *Id.* No such exercise of discretion is alleged here. Instead, Neala alleges that Xerox was required, under the terms of the maintenance plan, to keep the Presses in "good working order," but has failed to do so. (ECF 1 at ¶¶ 90-100). Those allegations are the same as those underlying the claim for express breach.

It is well-settled that where, as here, "a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013); *see also Livingston v. Trustco Bank*, 2022 WL 798157, at *15 (N.D.N.Y. March 16, 2022) ("Many courts assessing cases with similar fact patterns . . . dismiss claims for breach of the implied covenant of good faith and fair dealing where the plaintiff does not allege facts independent of or separate from those supporting the breach-of-contract claim." (collecting cases)); *Nazareth College of Rochester v. Harleysville Preferred Ins. Co.*, 2017 WL 999214, at *3 (W.D.N.Y. March 15, 2017) (same).

As Neala's claims for express breach and breach of the implied covenant of good faith and fair dealing rest on the same facts, the claim for breach of the implied covenant is dismissed.

<u>New York General Business Law §§ 349 and 350</u>

New York General Business Law §§ 349 and 350 both contain territorial limitations on their application. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*." Similarly, GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* is hereby declared unlawful." To bring a

claim under either statute, then, a plaintiff must allege a "transaction" with sufficient connections to New York to support jurisdiction.  *See Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002) (GBL § 349 "was not intended to police the out-of-state transactions of New York companies, nor was it intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state").

In *Goshen*, the New York Court of Appeals considered whether "hatching a scheme" or originating a marketing campaign in New York constituted an actionable deceptive act or practice under the statute where the entire transaction took place out-of-state, or whether the statute required that the consumer be deceived in New York.  *Id.* at 324.  In one of the two cases on appeal in *Goshen*, plaintiff alleged that defendant conceived and orchestrated in New York an elaborate "vanishing premium" insurance policy that it disseminated to potential customers.  *Id*. at 325.  Plaintiff received information about the policy in Florida, he bought the policy and paid his premiums in Florida, and used a Florida insurance agent.  *Id.*  Even though plaintiff alleged that the marketing scheme was created in, and disseminated from, New York, the Court of Appeals held that the transaction and resulting "deception took place in Florida." *Id.* It concluded that "[t]he phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer (citations omitted). Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York."  *Id*. at 325.

The Second Circuit considered the application of *Goshen* in *Cruz,* 720 F.3d 115. The Circuit held that "the appropriate test . . . is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive

transaction, rather than 'on the residency of the parties.'" *Id*. at 122.  Plaintiff in *Cruz* was a Virginia resident who alleged that defendant FCDirectDealer, LLC ("FXDD"), headquartered in New York City, violated §§ 349 and 350 by failing disclose the actual risks of participating in the foreign exchange market and engaging in several allegedly dishonest or deceptive practices *Id*. at 119. The Circuit found that New York had a strong connection to the transactions because plaintiff alleged that: (1) FXDD was paid in New York; (2) FXDD would not release funds from customer accounts until it received the required forms at its New York office; (3) all customer communications were sent to New York; (4) the contract specified that New York law governed all disputes; and (5) required all disputes be adjudicated in New York courts. *Id*. at 123-24. The Circuit found these allegations sufficient to survive a motion to dismiss, as they demonstrated that "at this stage, 'some part of the underlying transaction ... occur[red] in New York State,' giving Cruz statutory standing to sue for deceptive practices and false advertising under sections 349 and 350." *Id*. at 124 (*quoting Mountz v. Global Vision Prods., Inc*., 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003)).

Here, Neala pleads that (1) the Lease Agreement specifies that New York law applies and requires all disputes be adjudicated in New York courts (ECF 1 at ¶ 122); (2) "[t]he underlying lease and purchase agreements were developed in, disseminated from, and financed through New York" (*Id.* at ¶¶ 20,122); (3) "[t]he subject Presses and their components were designed, developed, and/or manufactured in New York";  (4) the allegedly deceptive marketing strategies were developed in New York (¶¶ 65; 125); (5)

the defective Presses were designed, developed and/or made in New York (¶¶ 104, 124); and (6) Xerox "is a New York corporation with a large physical presence in New York."[4]

While acknowledging that choice-of-law and forum selection provisions are not dispositive, Neala relies on *Wright v. Publishers Clearing House, Inc.* for the proposition that "the parties' agreement to a New York choice-of-law provision certainly enhances the transactions' connection to the state."  439 F. Supp. 3d 102, 112 (E.D.N.Y. 2020).  What Neala fails to acknowledge is that the court in *Wright* found such provisions inadequate to sustain jurisdiction where the transactions at issue "have no locus in New York beyond the Defendants' residency."  *Id.*; *see also  4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547-48 (S.D.N.Y. 2014) ("even though choice-of-law and forum-selection provisions may be indicative of a transaction in New York when other factors are presents, the mere fact that parties agreed to be bound by New York law and to resolve their disputes in courts in New York does not, in itself, provide any indication as to where the transaction occurred.").  As the *Wright* court noted, "the fact remains that the Plaintiffs merely received advertisements and products from New York.  *Goshen* makes clear that fact alone does not establish that the transaction occurred in New York, because transactions occur where the consumer viewed the advertisement or purchased the product."  *Id.*

Similarly, Neala's allegations fail to plead that the transactions at issue took place in New York.  Marketing plans created in New York but carried out elsewhere do not suffice to base a transaction in New York.  *Goshen*, 746 N.Y.2d at 864 (defendant must do more than "'hatch[] a scheme' or originat[e] a marketing campaign in New York")); *see*

---

[4] Neala states in its responsive brief that Xerox "receives payments and processes sales through its New York office" (ECF 14 at 18) but no such allegation appears in its Complaint.

*also Wright*, 439 F. Supp. 2d at 112 (plaintiffs alleged that "the Defendants hatched the deceptive scheme in New York; sent the relevant advertising materials from New York; and received payment and processed orders in New York. These facts neither individually nor cumulatively establish that some part of the underlying transaction occurred in New York State") (collecting cases). Nor does *Cruz* extend as far as Neala would like, since the plaintiffs in *Cruz* plausibly pleaded that defendant was paid in New York, required all customer communications be sent to its New York office, and "refused to disburse funds from customer accounts until it receive[d] a "Funds Redemption Form" at its New York office."  720 F.3d at 123-24.  Similarly, the remaining cases Neala relies also pleaded greater connections with New York than Neala does here.  *See Polk v. Del Gatto, Inc.*, 2021 WL 3146291, at *10 (S.D.N.Y. July 23, 2021) (jurisdiction existed where defendant receives, processes and sends payments through New York office and agreement contains New York choice of law clause); *Cline v. TouchTones Music Corp.*, 211 F. Supp. 3d 628, 633 (S.D.N.Y. 2016) (jurisdiction existed where payments processed in New York, company provided its services out of New York, and agreement contained New York choice-of-law clause).

Even if Neala established the "in this state" requirement, its §§ 349 and 350 claims are also time-barred. The Lease Agreement provided that "[a]ny action you take against Xerox must be commenced within 2 years after the event that caused it."  (ECF 12-2 at 6 ¶ 22).  Though the statute of limitations is an affirmative defense, a complaint may be dismissed for failure to state a claim if the allegations in the complaint "show that relief is barred by the applicable statute of limitations." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Muto v. CBS Corp.*, 668 F.3d 53, 60 (2d Cir. 2012) (same).  Xerox argues, and

18

Neala does not contest, that the GBL claims are time-barred absent tolling or estoppel. (ECF 14 at 20)  Neala argues the claims are not time barred because (1) Xerox engaged in a series of continuing wrongs, which tolls the limitations period until the last wrongful act is committed; and (2) Xerox is estopped from invoking the contractual limitations period because it engaged in affirmative deceptions.  (ECF 14 at 20-22).

"'Where a [GBL] § 349 claim is based on a series of allegedly deceptive acts, ... the continuing violations doctrine applies and effectively tolls the limitations period until the date of the commission of the last wrongful act.'" *Stanley*, 466 F. Supp. 3d at 432 (quoting *Breitman v. Xerox Educ. Servs.*, LLC, No. 12 Civ. 6583(PAC), 2013 WL 5420532, at *4 (S.D.N.Y. Sept. 27, 2013)).  "New York courts have explained that tolling based on the doctrine 'may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct[.]'" *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 122 (2d Cir. 2020) (*quoting Salomon v. Town of Wallkill*, 174 A.D.3d 720, 721 (2d Dep't 2019)). "The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs[.]"  *Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (1st Dep't 2017) (citations omitted).

Here, the Complaint alleges that Neala "would not have leased or purchased Presses had the drum defects been disclosed to them or if they had been aware of the actual output capacities given the frequency in which the Presses are broken down." (ECF 1 at ¶ 118)  But the Presses were leased in 2019 (ECF 12-2), so any claim based on that deception is time-barred. Neala argues that the "ongoing misrepresentations about the defects inherent in the Presses, drums, and toner (and its ability to remedy them) are "a series of independent, distinct wrongs" that toll the limitations period.  (ECF

14 at 20-21) The difficulty for Neala is that the Complaint does not allege that the alleged ongoing misrepresentations caused it to incur an injury. *See, e.g., Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) ("A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act.").   In its opposition brief, Neala alleges "Defendant induced Plaintiff by deception to believe that the Presses, drums, and toner were not defective and/or could be remedied and *therefore no cause of action existed*," (ECF 14 at 20) (emphasis added), but there are no allegations to that effect in the Complaint.

Neala also argues that the limitations period is tolled because its continued lease payments "constitute independent, distinct wrongs." (ECF 14 at 21).  Neala relies on *Stanley* for the proposition that "repetitive, allegedly wrongful payments have frequently" been found to be continuing independent wrongs.  466 F. Supp. 3d at 432.  *Stanley* is distinguishable: there, the charges themselves each allegedly "violated the quality of pricing that Plaintiff thought she would receive from Defendant."  *Id.*  "Therefore, each payment pursuant to each charge constitutes an individual wrongful act."  *Id.* (quotation marks omitted).  Here, however, payments made under the Lease Agreement cannot be the wrongful act.  The Lease Agreement contains a "hell-or-high water clause" in the Lease Agreement, which provided that Neala's:

> OBLIGATION TO MAKE ALL PAYMENTS, AND TO PAY ANY OTHER AMOUNTS DUE OR TO BECOME DUE, IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO DELAY, REDUCTION, SET-FF, DEFENSE, COUNTERCLAIM OR RECOUPMENT FOR ANY REASON WHATSOEVER, IRRESPECTIVE OF XEROX'S PERFORMANCE OF ITS OBLIGATIONS HEREUNDER.  ANY CLAIM AGAINST XEROX MAY BE ASSERTED IN A SEPARATE ACTION AND SOLELY AGAINST XEROX.

(ECF 12-2 at 6 ¶ 20).  Unlike the payments at issue in *Stanley*, the payments here stem from one alleged wrong act: the lease of defective Presses.  The lease payments are "continuing effects of earlier unlawful conduct," not "separate occurrences" that restart the clock for statute of limitations purposes. *See, e.g., DuBuisson v. Nat'l Fire Ins. of Pittsburgh*, No. 15-2259, 2021 WL 3141672, at *8 (S.D.N.Y. July 26, 2021) (where plaintiffs alleged they suffered harm "as a result of false and misleading advertising that induced them to purchase the insurance policies in the first place. The monthly premiums are merely "continuing effects of earlier unlawful conduct," monthly premium payments were continuing effects).

Nor does equitable tolling apply.  "Equitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli–Edelglass v. N.Y. City Transit Auth*., 333 F.3d 74, 80 (2d Cir.2003) (internal quotation marks, alterations, and citation omitted).  That is "generally" the case "where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant." *Id.*  "Under New York law, equitable tolling is only available if 'plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Orange Transp. Servs., Inc. v. Volvo Group N. Am., LLC*, 450 F. Supp. 3d 311, 321 (W.D.N.Y. 2020) (quoting *Woods v. Maytag Co*., No. 10-CV-559, 2010 WL 4314313, at *4 (E.D.N.Y. Nov. 2, 2010).  "Generalized or conclusory allegations of fraudulent concealment are not sufficient to toll a statute of limitations." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013). "For equitable tolling to apply, a plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort."

*Id*.  "Equitable tolling 'is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.'"  *Id*. (quoting *Ross v. Louise Wise Servs., Inc*., 8 N.Y.3d 478, 492 (2007)).  The "burden of proving that tolling is appropriate rests on the plaintiff." *Chapman v. Choice–Care Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

Neala contends in its brief that Xerox "made numerous affirmative representations about the capacity and reliability of its Presses, and it was only with the passage of time that Plaintiff could learn of their falsity."  (ECF 14 at 21). Even assuming *arguendo* the Complaint alleges that Xerox made affirmative representations, as opposed to concealing the issues related to the allegedly defective products, that is not enough for Neala to invoke equitable estoppel to toll the limitations period. Rather, Neala needed to plead that Xerox acted to prevent Neala from exercising its rights during the limitations period.  As the Complaint lacks any such allegations, Neala's claims under §§ 349 and 350 are time barred.

<u>Negligence and Negligent Misrepresentation</u>

New York does not allow a breach of contract to give rise to a tort claim unless a legal duty independent of the contract exists and is violated. *See Clark–Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).  The "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract." *Id*.  "Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 59–61 (2d Cir. 2012).

Neala argues that Xerox owes it an independent duty under GBL §§ 349 and 350. As set out above, however, Neala's claims under those statutes are not cognizable. Neala relies on *Sanchez v. Ehrlich* for the proposition that the violation of a statute that imposes a duty "establishes the duty and breach elements of a negligence claim." No. 16-CV-8677, 2018 WL 2084147, at *8 (S.D.N.Y. Mar. 29, 2018).   However, *Sanchez* addresses the use of a statutory violation in the context of a noncontractual negligence claim.   It does not stand for the proposition that a statutory violation may create an independent duty in tort separate from a defendant's contractual duties.   Neala points to no other independent duty to support its negligence claim, and thus the claim is dismissed.

Neala's claim also fails under the economic loss doctrine.  "This doctrine prevents a plaintiff from recovering purely economic losses in a negligence action*." Cruz v. TD Bank, N.A*., 855 F. Supp. 2d 157, 178 (S.D.N.Y. 2012), *aff'd and remanded*, 742 F.3d 520 (2d Cir. 2013).  "[C]ourts have applied the economic loss rule to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." *Hydro Invs., Inc. v. Trafalgar Power In*c., 227 F.3d 8, 16 (2d Cir. 2000).

Neala argues it falls within two exceptions to the economic loss rule.  (ECF 14 at 26-27).  The first, the services exception, "exists for claims for negligent performance of contractual services." *B&M Linen, Corp. v. Kannegiesser USA, Corp.*, 2013 WL 1142679, at *6 (S.D.N.Y. March 19, 2013).  However, Neala's briefing omits the fact that a plaintiff must demonstrate an independent duty separate from the service contract to benefit from this exception. *Id.* ("courts have precluded a plaintiff from invoking [the service contract]

exception absent a showing of a duty independent of a contractual relationship"); *see also Betancourt Props. Management Corp. v. Simplex Grinnell LP*, 2009 WL 424144, at *5 (S.D.N.Y. Feb. 19, 2009) (same).   Neala's failure to plead a duty independent of the contract means it cannot avail itself of this exception.

The service exception also does not apply where, as here, the underlying contract is not "predominately service oriented."  *Vitolo v. Dow Corning Corp.*, 651 N.Y.S.2d 104 (2d Dep't 1996). "The distinction between goods contracts and service contracts turns on whether the transaction, taken as a whole, is 'deemed to be a sale of goods, and thus falls within U.C.C. article 2;' or is 'deemed to be predominantly service oriented,' in which case 'the case falls outside U.C.C. article 2 and plaintiff would have no cause of action for breach of implied or express warranties but would have a cause of action for negligence." *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 207 (E.D.N.Y. 2010) (*quoting Word Mgmt. Corp. v. AT & T Info. Sys., Inc.*, 525 N.Y.S.2d 433, 435–36 (3d Dep't 1988). "The fact that some maintenance and support services are included in the contract does not change the conclusion that it is not "predominantly service oriented." *Id.*  As in *Shema*, here the Lease Agreement is primarily for the lease of the Presses, and the provision of maintenance services is incidental to that agreement. *See id.* (collecting cases).

Finally, Neala argues that the economic loss rule does not apply because "[c]ourts have held that a claim for tort liability is available where a product causes damage, not only to itself, but to other property as well."  *Rochester-Genesee Regional Trans. Auth. v. Cummins, Inc.*, 2010 WL 2998768, at *9 (W.D.N.Y. July 28, 2010).   "Critical to a determination of whether a tort claim is barred by the economic loss doctrine is whether

damages are sought for the failure of the product to perform its intended purpose, in which case recovery is barred by the economic loss doctrine, or for direct and consequential damages caused by a defective and unsafe product." *Praxair, Inc. v. Gen. Insulation Co*., 611 F. Supp. 2d 318, 326 (W.D.N.Y. 2009). That is, the "doctrine does not apply where a defective product causes damage to other property." *Id.* at 326 (quotation marks omitted) (collecting cases).

In *Praxair*, the plaintiff brought negligence and strict liability claims against the manufacturer of an insulation coating product used as a joint sealant for its cryogenic testing facility. *Id.* at 321.  Plaintiff alleged that the coating caused extensive corrosion to the piping system employed throughout the facility. *Id.*  The court noted that plaintiff did not seek damages related to the joint sealant's "failure to perform its intended purpose as an insulation joint sealer." *Id.* at 327.  Rather, plaintiff alleged that the mastic was defectively manufactured in that included ingredients that damaged the pipes. *Id.* Because "Plaintiff [did] not seek to recover under tort for the mastic's failure to perform its intended purpose as an insulation joint sealant," the court found it premature to dismiss the tort claims as barred by the economic loss doctrine. *Id.* at 327.

Neala alleges that because Xerox failed to properly repair the Presses, it incurred damages in "the form of  . . . wasted materials (e.g. paper) . . .." (ECF 1 at ¶ 97).  But those damages flow directly from the Presses' failure to perform its intended purpose. The allegations are similar to those in *Bristol Village, Inc. v. Louisiana-Pacific Corp.*, 916 F. Supp. 357 (W.D.N.Y. 2013), where plaintiff's claims were barred by the economic loss rule.  There, plaintiff sued a product manufacturer alleging that, as a result of defective trim board, plaintiff's structure sustained significant water damage. *Id.* The district court

dismissed the claim as barred by the economic loss rule, concluding "that the damage claimed relates to the expectations of the parties regarding the performance of [the product], thus relegating these plaintiffs to contractual remedies such as warranty." *Id.* at 366; *see also Hemming v. Certainteed Corp.*, 488 N.Y.S.2d 789 (4th Dep't 1983) (tort claims barred by the economic loss doctrine where "[t]he essence of plaintiffs' claims [was] that the [siding systems] did not perform properly to protect their homes and, as a consequence, they ... suffered direct loss to the siding itself and consequential damages to their homes").

### *Negligent Misrepresentation*

Under New York law, "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. V. Wildenstein*, 16 N.Y.3d 173, 180 (2011). "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Id.* (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)). Neala argues that the relationship between itself and Xerox "satisfies that standard" because Xerox had "superior knowledge," and "made its misrepresentations with the awareness that they would be used by printers to make decisions about which equipment to use to run their businesses." (ECF 14 at 29). However, New York courts "regularly hold as a matter of law that an arm's length business arrangement between sophisticated and experienced parties cannot give rise to a 'special relationship.' " *Fed.*

*Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 334 (S.D.N.Y. 2012) (collecting cases).  Further, "knowledge of the particulars of [a] company's business— and of the true situation underlying the misrepresentations pertaining to that business ... does not constitute the type of 'specialized knowledge' that is required in order to impose a duty of care in the commercial context." *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004).

Nor does *Sparago v. Beaver Mountain Log Homes, Inc.* provide Neala the support it seeks.  No. 20-276, 2021 WL 965448 (S.D.N.Y. March 15, 2021).  There, the district court found that defendant "essentially stood in the role of project manager for the building of [plaintiff's] log cabin home," and "Defendant made statements to Plaintiff that were to be 'used for a particular purpose' during the builder selection process, namely that [certain contractors] were reputable and skilled contractors, despite Defendant knowing information that would show otherwise."  *Id.* at *8.  Additionally, the complaint in *Sparago* specifically pleaded that "Defendant's promotional materials, website, and employees represent[ed] that the company offers 'knowledge and expertise' to 'put its customers' minds at ease by assuring them it will find reputable builders for their construction projects.'"  *Id.*  The Complaint here lacks any similar representations, or any other allegations that would raise the relationship between Xerox and Neala from that of leasor-leasee to a "special relationship."  *See, e.g., Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258 (SAS), 2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004) ("A simple commercial relationship, such as that between a buyer and seller or franchisor and franchisee, does not constitute the kind of 'special relationship' necessary to support a negligent misrepresentation claim.").

CONCLUSION

Xerox's Motion to Dismiss the Complaint is granted as to all but Count One of the Complaint, which is dismissed without prejudice only insofar as it seeks damages other than the contractual remedy of replacement. Count One will proceed insofar as it seeks the remedy of replacement.  Count Two (violations of GBL §§ 349 and 350), Count Four (negligence), and Count Five (negligent misrepresentation) are dismissed without prejudice.  Count Three (violations of the Lanham Act) and Count Six (unjust enrichment) are dismissed with prejudice, as Neala declined to defend them.

SO ORDERED.

DATED:        September 4, 2024
                   Rochester, New York

CHARLES J. SIRAGUSA
United States District Judge